**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**HANNAH M. RAY,**
      Plaintiff,

vs.
                                              **Case No.:** 8:24-CV-02200

**CITY OF CLEARWATER,**
**SCOTT YEATES & ROB SHAW**
      Defendants,

_____/

**AMENDED COMPLAINT**

**INTRODUCTION AND GENERAL ALLEGATIONS**

Plaintiff, **HANNAH M. RAY**, brings this Complaint against the Defendants, **CITY OF CLEARWATER, SCOTT YEATES** and **ROB SHAW,** alleging the following:

1. This is an action for damages in excess of $50,000.00 (Fifty Thousand dollars.)

2. At all times material to this cause of action, the Plaintiff, **HANNAH M. RAY,** was a resident of Pinellas County, Florida.

3. At all times material to this cause of action, the Defendant, **CITY OF CLEARWATER,** was a municipality under the laws of the State of Florida.

4. At all times material to this cause of action, the Defendant, **SCOTT YEATES,** was a police officer employed by the City of Clearwater, acting in the course and scope of his employment at the time of the incident herein described.

1

5. The Plaintiff, **HANNAH M. RAY**, has complied with the Notice of Claim provisions of section *768.28 Florida Statutes*.

6. On or about December 4, 2022, the Defendant, **SCOTT YEATES**, arrested the Plaintiff, **HANNAH M. RAY**, for the offense of DUI Manslaughter, against her will.

7. In order to accomplish a lawful arrest, probable cause must exist that the subject has committed a crime. Probable cause requires proof that under the totality of the circumstances, the facts available to the Officer at the time of the arrest, coupled with his experience and training, demonstrates that it is more likely, than not, that a crime was committed and the subject committed the crime.

8. The offense of DUI Manslaughter requires proof that the subject was under the influence of alcohol, to the extent that her normal faculties were impaired while operating a motor vehicle and that the operation of a motor vehicle while impaired, caused the death of another.

9. *Normal faculties* is defined as: the ability to drive a car, see, hear, walk, talk, judge distances, act in emergencies and perform everyday functions of daily life. (*See Florida Jury Instructions 7.8.*)

10. At the time of the arrest described herein, the Plaintiff, **HANNAH M. RAY**, resided at Arabelle Clearwater Apartments in Clearwater, Florida. Arabelle Clearwater Apartments is located adjacent to and accessible from a Southbound Frontage Road running parallel to U.S. Highway 19 (US 19), crossing through the interchanges at Gulf-to-Bay Boulevard (State Road 60) and State Road 686 (Roosevelt Boulevard/East Bay Drive).

2

11. On December 1, 2022, the Defendant, **CITY OF CLEARWATER**, published/posted a color-coded map, to its Facebook page, informing the community of upcoming road closures that would be in effect on U.S. Highway 19 for the dates of: December 3, 2022 and December 4, 2022. The Frontage Road in the location of Arabelle Clearwater Apartments was not closed. This location, Frontage Road, and the intersection of U.S. Highway 19 and Frontage Road was open to traffic on December 4, 2022. *(See Exhibit A and Exhibit B)*

12. On the evening of December 3, 2022, the Plaintiff, **HANNAH M. RAY**, drove through the intersection of U.S. Highway 19 and Gulf-to-Bay Boulevard, heading East, on her way to Tampa around 7:00 P.M. At that time, there were no signs or cones on Gulf-to-Bay Boulevard re-directing any traffic.

13. The Plaintiff, **HANNAH M. RAY**, returned from Tampa shortly after midnight on December 4, 2022. At this time, orange cones had been placed on a lane line, in-between left turn lanes and through lanes on the westbound Gulf-to-Bay Boulevard lanes leading up to the intersection at U.S. Highway 19. There were no signs on Gulf-to-Bay Boulevard prohibiting left turns onto the Frontage Road, previously described herein. *(See Exhibit F)*

14. A sign reading "*Detour U.S. 19 South,*" was posted at the intersection of U.S. Highway 19 and Gulf-to-Bay Boulevard. This sign did not address turns onto the Frontage Road and only alerted drivers to a detour for U.S. Highway 19, Southbound. This sign had an arrow pointing straight ahead/Westbound.

3

15. The intersection of U.S. Highway 19 and Gulf-to-Bay Boulevard (State Road 60) is one of the most dangerous intersections in the State of Florida. This interchange was the first Single-Point Urban Interchange in the United States. The hazards of this intersection are well-known to the Defendant, **CITY OF CLEARWATER**, as well as the Clearwater Police Department.

16. Unclear as what to do, the Plaintiff, **HANNAH M. RAY**, began to turn left onto the Frontage Road to return home, as she normally would. It was then, well after the Plaintiff, **HANNAH M. RAY**, was in the midst of the turn, she was confronted with a *"Road Closed,"* sign.

17. At the same instance, an individual named Jeffrey Conner was operating a motorcycle traveling Eastbound on Gulf-to-Bay Boulevard, at an excessively high rate of speed. Mr. Conner's blood alcohol content was almost three times that of the legal limit in the State of Florida. Mr. Conner had over fifty (50) arrests and traffic citations including, driving under the influence.

18. Mr. Conner's motorcycle collided with the Plaintiff's, **HANNAH M. RAY**, vehicle in the aforementioned intersection at approximately, 12:25 A.M. Mr. Jeffrey Conner died as a result of injuries he sustained in this collision.

19. Officers from the Clearwater Police Department, employed by the Defendant, **CITY OF CLEARWATER**, and first responders, emergency medical personnel arrived at the scene of the collision within minutes. Cardiopulmonary Resuscitation (CPR) was attempted on Mr. Conner and the Plaintiff, **HANNAH M. RAY**, was assessed in an ambulance for any injuries, at the scene. The paramedic's assessing the Plaintiff, **HANNAH M. RAY**, determined that no *EtOH (ethanol)* was suspected as a result of

4

her examination. This finding is documented by Paramedic, Johnathan Brown (PMD540971) within Pinellas County Emergency Medical Services Patient Care Report, EMS Run Number: 2762642.  Clearwater Police Department Body Worn Camera (BWC) video presents the Plaintiff, **HANNAH M. RAY**, inside the Ambulance, in the presence of multiple medical personnel. *(See Exhibit C)*

20. Approximately one hour after the collision, the Plaintiff, **HANNAH M. RAY**, was asked to perform field sobriety exercises. Each field sobriety exercise was videotaped by the Clearwater Police Department. The video recordings of the Plaintiff, **HANNAH M. RAY**, performing each field sobriety exercise during that period, demonstrates no staggering, stumbling, swaying or any loss of balance. In addition, the same video recordings demonstrate the Plaintiff, **HANNAH M. RAY**, having no issues with her speech. The Plaintiff, **HANNAH M. RAY**, is never heard mumbling or slurring her words.

21. During the same period of time, the Clearwater Police Department was conducting their investigation of the collision. The Defendant, **SCOTT YEATES**, an Officer with the Clearwater Police Department, reported two observations that were egregiously false. The observations that the Defendant, **SCOTT YEATES**, reported ultimately assisted the Defendant, **SCOTT YEATES**, in forming the grounds and basis for the arrest of the Plaintiff, **HANNAH M. RAY**. First, the Defendant, **SCOTT YEATES**, reported that the Plaintiff's, **HANNAH M. RAY**, eyes were "bloodshot" and "glassy". The Plaintiff, **HANNAH M. RAY**, was photographed extensively at the scene, before her arrest. The Plaintiff's, **HANNAH M. RAY**, eyes are clear in each photograph, without any hint of redness whatsoever. Secondly, the

5

Defendant, **SCOTT YEATES**, reported that the Plaintiff's, **HANNAH M. RAY**, speech was mumbled. The Plaintiff, **HANNAH M. RAY**, was recorded by multiple police Body Worn Cameras (BWC) from the first initial contact made by the Clearwater Police Department's Officer's at 12:25 A.M., to the time that she was handcuffed and escorted into the back seat of a police vehicle en-route to the Pinellas County Jail at 5:39 A.M. These recordings span over a 4-hour period of time. At no time is the Plaintiff's, **HANNAH M. RAY**, speech slurred, mumbled, or garbled. *(See Exhibit D)*

22. During the investigation, the Plaintiff, **HANNAH M. RAY**, was asked to perform multiple field sobriety exercises as explained herein. These exercises were the following: *HGN; LOC; Walk and Turn*; *One Leg Stand*; *Finger to Nose*; and *Estimate 30 Seconds of Time* (with eyes closed.) The Plaintiff, **HANNAH M. RAY**, performs each test near flawlessly. All Field Sobriety Exercises are videotaped.

23. Additionally, the Plaintiff, **HANNAH M. RAY**, is observed walking throughout the scene of the collision. She is observed walking without assistance to an area to be photographed, she turns and stands to pose as directed without any staggering, stumbling or any loss of balance. The Plaintiff, **HANNAH M. RAY,** is observed and recorded putting on a Clearwater Police Department Officer's jacket, she has the wherewithal to realize the jacket is inside out and rearranges it correctly before putting it on herself. The Plaintiff, **HANNAH M. RAY**, is observed taking off thigh-high, heeled boots without assistance, while standing on one leg without even swaying. The Plaintiff, **HANNAH M. RAY**, is further observed putting the thigh-high, heeled boots back on both feet, with no assistance. *(See Exhibit E)*

6

24. The continuous actions demonstrated by the Plaintiff, **HANNAH M. RAY**,
repeatedly, lack of anything approaching impairment, up to the time she was finally
escorted to the Pinellas County Jail. The Plaintiff's, **HANNAH M. RAY**, conduct,
also recorded by Body Worn Camera (BWC), proceeds to show the Plaintiff,
**HANNAH M. RAY**, ushered in and out of police vehicles, stepping up, into and out
of an Ambulance, twice, wearing the same thigh-high heeled boots that she removed
on one leg, previously described, all while being handcuffed. The Plaintiff's,
**HANNAH M. RAY**, hands were handcuffed behind her back. The Plaintiff,
**HANNAH M. RAY**, did so with no assistance, no staggering, no swaying, and no
stumbling. The Plaintiff, **HANNAH M. RAY**, gave consent for two blood draws, for
testing purposes, each time she was asked to step into the Ambulance, this being after
her arrest. *(See Exhibit E)*

25. The Defendant, **SCOTT YEATES**, acted in the course and scope of his employment
with the Defendant, **CITY OF CLEARWATER,** as a police officer with the
Clearwater Police Department, when he arrested the Plaintiff, **HANNAH M. RAY**.

26. The Clearwater Police Department, Officers on the scene of the collision, including
the Defendant, **SCOTT YEATES**, was aware or had the reasonable knowledge that
the Plaintiff, **HANNAH M. RAY**, lived at Arabelle Clearwater Apartments,
accessible from the Frontage Road that runs parallel to U.S. Highway 19.

27. The Clearwater Police Department, including the Defendant, **SCOTT YEATES**, was
aware or had the reasonable knowledge that traffic was not restricted to motor
vehicles, traveling Southbound entering the Frontage Road, adjacent to U.S. Highway
19. *(See Exhibit A and Exhibit B)*

28. The Clearwater Police Department, including the Defendant, **SCOTT YEATES**, knew or had the reasonable knowledge that the motorcyclist, Jeffrey Conner, had an extensive criminal record that included a slew of criminal and traffic offenses. The Clearwater Police Department, including the Defendant, **SCOTT YEATES**, had reason to review Mr. Conner's background/criminal record when assessing the totality of the circumstances.

29. The arrest of the Plaintiff, **HANNAH M. RAY**, was unreasonable and unjustified under the circumstances. The Clearwater Police Department, specifically, the Defendant, **SCOTT YEATES**, lacked probable cause based on the totality of the circumstances, including, but not limited to, the following facts that were known and/or available to the Defendant, **SCOTT YEATES**, at the time such as, not limited to:

    **a.)** Knowledge that there were no signs posted, alerting or preventing drivers from making a left turn onto the Frontage Road, placed on Gulf-to-Bay Boulevard (State Road 60); *(See Exhibit F)*

    **b.)** Knowledge that the only sign posted, preventing access to the entrance ramp of the Frontage Road, could not be readily viewed until after the turn was underway;

    **c.)** Knowledge that traffic was allowed onto the Frontage Road, at the intersection of U.S. Highway 19 and Gulf-to-Bay Boulevard (State Road 60); *(See Exhibit A)*

    **d.)** Knowledge that the only sign posted, anywhere, was regarding a detour for U.S. Highway 19, Southbound;

**e.)** Knowledge that the Defendant, **CITY OF CLEARWATER,** posted/published a color-coded map, detailing the Southbound Frontage Road, open on December 3-4, 2022, at that intersection; *(See Exhibit A)*

**f.)** Knowledge that the Plaintiff, **HANNAH M. RAY,** resided at Arabelle Clearwater Apartments, adjacent to the Frontage Road, and was en-route to her residence;

**g.)** Knowledge that an illegal left turn is not evidence of erratic driving *(Nicholas v. State, 857 So.2d 980 (4th DCA 2003);*

**h.)** Knowledge that there was nothing wrong with the Plaintiff's, **HANNAH M. RAY,** speech;

**i.)** Knowledge that the Plaintiff, **HANNAH M. RAY,** had been evaluated before the Clearwater Police Department conducted an investigation, by Emergency Medical Technicians (EMT's) and Paramedics on the scene, whom documented in sworn statements, that the Plaintiff, **HANNHAH. M. RAY,** did not emit any odor of alcohol *(EtOH); (See Exhibit C)*

**j.)** Knowledge of the documented reports that specifically addressed *EtOH* (alcohol) involvement, by EMT's in their examination of the Plaintiff, **HANNAH M. RAY,** found no *EtOH* (alcohol) involvement; *(See Exhibit C)*

**k.)** Knowledge that the Plaintiff, **HANNAH M. RAY,** did not have "bloodshot" or "glassy" eyes and in fact, her eyes were clear; *(See Exhibit D)*

**l.)** Knowledge that photographs of the Plaintiff, **HANNAH M. RAY,** were taken at the scene demonstrating her eyes were clear; *(See Exhibit D)*

9

**m.)** Knowledge that the Plaintiff, **HANNAH M. RAY**, performed almost perfectly on every field sobriety test administered to her;

**n.)** Knowledge that on the *Walk and Turn*, field sobriety test, the Plaintiff, **HANNAH M. RAY**, counted the correct number of steps, performed the correct number of steps, and touched heel to toe each time without stepping off the marked line;

**o.)** Knowledge that on the *One Leg Stand*, field sobriety test, the Plaintiff, **HANNAH M. RAY**, kept her leg up for the entire test without swaying, without losing her balance, or dropping her foot;

**p.)** Knowledge that on the *Finger to Nose*, field sobriety test, the Plaintiff, **HANNAH M. RAY**, used the correct hand each time, used the correct finger each time, touched her nose each time, and did not sway or lose her balance;

**q.)** Knowledge that on the *Time Test,* field sobriety test, the Plaintiff, **HANNAH M. RAY**, estimated 30 seconds within 4 seconds, with her eyes closed and did not sway or lose her balance;

**r.)** Knowledge that the motorcyclist, Jeffrey Conner, had been operating his motorcycle at an excessive rate of speed, evident from the skid marks left on the road, coupled with the penetration damage to the Plaintiff's, **HANNAH M. RAY**, vehicle;

**s.)** Knowledge that Jeffrey Conner had an extensive drug and alcohol related traffic/criminal record which should have caused a reasonable officer to suspect his operation of his motorcycle was inappropriate;

10

**t.)** Knowledge that the Plaintiff, **HANNAH M. RAY**, had the dexterity to take off and put on thigh-high heeled boots, standing on one leg with no assistance or "swaying" before she performed any field sobriety exercises; *(See Exhibit E)*

**u.)** Knowledge that the Plaintiff, **HANNAH M. RAY**, recognized clothing handed to her by another Officer was inside out and properly re-arranged it herself;

**v.)** Knowledge that there were multiple, Body Wear Cameras (BWC) that recorded the Plaintiff, **HANNAH M. RAY**, conducting, extensive conversations with other police officers before being placed under arrest with no evidence of impaired speech;

**w.)** Knowledge that the Plaintiff, **HANNAH M. RAY**, voluntarily requested a breath test (that was not given);

**x.)** Knowledge that the Plaintiff, **HANNAH M. RAY**, inquired about the condition of Jeffrey Conner;

**y.)** Knowledge that the Plaintiff, **HANNAH M. RAY**, was recorded by multiple Clearwater Police Department Officer's wearing Body Wear Cameras  (BWC) demonstrating the Plaintiff's, **HANNAH M. RAY**, ability to walk without issues, speak, ask questions, answer questions, and follow instructions for over 4 (four) hours;

**z.)** There was no evidence of the Plaintiff's, **HANNAH M. RAY**, vehicle weaving, speeding, swerving within a lane, striking cones, or curbs or other erratic driving while the vehicle was being operated.

11

## COUNT ONE: FALSE ARREST

The Plaintiff. **HANNAH M. RAY**, sues the Defendant, **CITY OF CLEARWATER**, for False Arrest and alleges the following:

30. The Plaintiff, **HANNAH M. RAY**, re-alleges paragraphs 1-29 as the General Allegations.

31. An arrest made without probable cause, is an actionable, false arrest that subjects the employer of a Police Officer making such arrest, liable to damages.

32. The Defendant, **SCOTT YEATES**, was acting as a Police Officer for the Defendant, **CITY OF CLEARWATER**, lacking probable cause to arrest the Plaintiff, **HANNAH M. RAY**, as extensively set forth herein.

33. The arrest of the Plaintiff, **HANNAH M. RAY**, was unreasonable and unjustified. The arrest was made against the will of the Plaintiff, **HANNAH M. RAY**, and under the circumstances, was unnecessary.

34. The Plaintiff, **HANNAH M. RAY**, was not impaired by alcohol or any other substance on the date of the collision, December 4, 2022.

**WHEREFORE**, the Plaintiff, **HANNAH M. RAY**, requests this Honorable Court award Damages and requests Trial by Jury.

12

## COUNT TWO: VIOLATION OF FOURTH AMENDMENT CONSTITUTIONAL RIGHTS

The Plaintiff, **HANNAH M. RAY**, sues the Defendant, **SCOTT YEATES**, for violating her Civil Rights under *The Fourth Amendment to the United States Constitution* and alleges the following:

35. The Plaintiff, **HANNAH M. RAY**, re-alleges the General Allegations of the Complaint, contained herein.

36. This is an action for damages in excess of $50,000.00 (Fifty Thousand dollars) pursuant to the *Ku Klux Klan Act, Title 42 Section 1983 of the United States Code*.

37. Arresting any individual, without probable cause, is clearly recognized as the violation of an individual's Civil Rights under *The Fourth Amendment to the United States Constitution*.

38.The Defendant, **SCOTT YEATES**, was "acting under the color of law", as a Police Officer for the Defendant, **CITY OF CLEARWATER**, at the time he consciously arrested the Plaintiff, **HANNAH M. RAY**.

39. The Defendant, **SCOTT YEATES**, arrested the Plaintiff, **HANNAH M. RAY**, against her will, without probable cause for the offense of DUI Manslaughter as set forth, herein.

**WHEREFORE**, the Plaintiff, **HANNAH M. RAY**, requests this Honorable Court award Damages and Attorney Fees, recoverable under *Title 42 Section 1983 of the United States Code* and Trial by Jury.

13

## COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Plaintiff, **HANNAH M. RAY,** sues the Defendant, **SCOTT YEATES,** and other agents and/or employees of the Clearwater Police Department, unknown at the present and alleges the following:

40. The Plaintiff, **HANNAH M. RAY**, re-alleges the General Allegations, previously set forth herein.

41. When conduct is beyond the bounds of common decency, Liability for Intentional Infliction of Emotional Distress exists. The State of Florida recognizes a claim for Intentional Infliction of Emotional Distress against any law enforcement personnel, including police officers, who falsify charging documents to convict a Plaintiff of a non-existent crime. (*Tillman v. Orange County, 519 F.App'x 632 (11th Cir. 2013).*

42. Lying about a suspect's condition, when that condition is directly related to the formation of probable cause to arrest, is conduct so outrageous, as to be beyond the bounds of common decency.

43. The Defendant's, **SCOTT YEATES**, assertion that the Plaintiff, **HANNAH M. RAY**, had "Bloodshot" and "watery eyes", was egregiously false. *(See Exhibit D)*

44. The Defendant's, **SCOTT YEATES**, assertion that the Plaintiff, **HANNAH M. RAY**, had "Mumbled" speech, was egregiously false.

45. The Defendant's, **SCOTT YEATES**, assertion that the Plaintiff, **HANNAH M. RAY**, showed, "signs of impairment such as an odor of an alcoholic beverage," was knowingly false. *(See Exhibit C)*

14

46. These assertions determined by the Defendant, **SCOTT YEATES**, were documented and published in public police reports.

47. The Defendant, **SCOTT YEATES**, used false assertions as a basis to arrest the Plaintiff, **HANNAH M. RAY**.

48. The Defendant, **SCOTT YEATES**, knew his assertions were false and outrageous.

49. Despite having the knowledge and the wherewithal that the Plaintiff, **HANNAH M. RAY**, was innocent of any criminal offense, and despite having the knowledge that the motorcyclist, Jeffrey Conner, was a habitual drunk driver, and despite even having the knowledge that charges were dropped against the Plaintiff, **HANNAH M. RAY**, the Defendant, **SCOTT YEATES**, authored an Amended, public crash report on or about March 3, 2023. The Defendant, **SCOTT YEATES**, once again, asserted that the Plaintiff, **HANNAH M. RAY**, committed the offense of, DUI Manslaughter.


   **WHEREFORE**, the Plaintiff, **HANNAH M. RAY**, requests this Honorable Court award Damages against the Defendant, **SCOTT YEATES**, and requests Trial by Jury.



## COUNT FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ROB SHAW


   The Plaintiff, **HANNAH M. RAY**, sues **ROB SHAW** employed by the Defendant, **CITY OF CLEARWATER**, for Intentional Infliction of Emotional Distress and states the following:

50. The Plaintiff, **HANNAH M. RAY**, re-alleges the General Allegations contained herein.

51. The Defendant, **ROB SHAW**, is the public information officer for the Clearwater Police Department. The Defendant, **ROB SHAW** operates and maintained social media accounts, including a Twitter page/account with additional social media accounts at the time of the incident described herein.

52. The Defendant, **ROB SHAW**, posted on the Clearwater Police Department's Twitter account a mugshot of the Plaintiff, **HANNAH M. RAY**, shortly after her arrest. The title of the post said, *"Clearwater woman charged with DUI Manslaughter after she causes crash that killed a motorcyclist..."* obviously asserting that she drove under the influence (drunk) and was the cause of Jeffrey Conner's death. *(See Exhibit G)*

53. The two blood draws, taken for testing purposes of the Plaintiff, **HANNAH M. RAY**, conclusively established that the Plaintiff, **HANNAH M. RAY**, had no drugs or alcohol in her system, when the collision took place. The Toxicology report of the motorcyclist, Jeffrey Conner, concluded he had a blood alcohol level of 0.214%. These Toxicology results were obtained by the Clearwater Police Department, no later than the month of January, 2023.

54. On January 23, 2023 the State Attorney for the Sixth Judicial Circuit in Pinellas County, filed a *No Information* on the Plaintiff's, **HANNAH M. RAY**, charge of DUI Manslaughter, thus, dismissing the case.

55. Despite knowledge that the Plaintiff, **HANNAH M. RAY**, was in fact innocent of any criminal offense, despite knowledge that the motorcyclist, Jeffrey Conner, was the actual drunk driver and despite knowledge that the charges against the Plaintiff, **HANNAH M. RAY**, had been dropped, the Defendant, **ROB SHAW,** maintained its Twitter post, proclaiming the

Plaintiff, **HANNAH M. RAY**, drove drunk and was the cause of Jeffrey Conner's death until June 2023. *(See Exhibit G)*

56. On or about June 13, 2023, six months after the Pinellas County State Attorney's Office dropped charges against the Plaintiff, **HANNAH M. RAY**, did the Defendant, **ROB SHAW**, employed by the Clearwater Police Department, finally delete the social media post accusing the Plaintiff, **HANNAH M. RAY**, of driving drunk and causing Jeffrey Conner's death. This only occurring after multiple requests from the Plaintiff's, **HANNAH M. RAY**, Attorney. The Defendant, **ROB SHAW**, never corrected the record by disclosing the truth via any social media that Jeffrey Conner's operation of a motorcycle, at excessive speed, and driving with a Blood Alcohol Content (BAC) nearly three times the legal limit, was the proximate cause of his death.

57. The Defendant, **ROB SHAW**, has never posted the truth or made any corrections that the Plaintiff, **HANNAH M. RAY**, was actually innocent of any crime and had been falsely accused.

58. The Defendant, **ROB SHAW**, never posted the truth or made any corrections that the Plaintiff, **HANNAH M. RAY**, did not have bloodshot eyes, nor was her speech mumbled and never did smell of alcohol. *(See Exhibit D)*

59. The Defendant's, **ROB SHAW**, failure to timely address the Plaintiff's, **HANNAH M. RAY**, innocence and remove all social media posts, resulted in numerous social media posts throughout the country repeating the false accusations that the Plaintiff, **HANNAH M. RAY**, had committed a crime including, but not limited to:

**https://iontb.com/driver-charged-with-dui-manslaughter-in-death-of-motorcyclist-inclearwater/**

**https://www.tampabay.com/news/breaking-news/2022/12/05/woman-arrested-dui-chargeafter-clearwater-crash-that-killed-motorcyclist/?outputType=amp**

https://www.wfla.com/news/pinellas-county/clearwater-woman-killed-motorcyclist-whiledriving-drunk-police-say/amp/

https://jobsbots.com/tragic-hannah-ray-accident-sheds-light-on-the-consequences-ofimpaired-driving/amp/

https://www.fresherslive.com/latest/articles/hannah-ray-accident-what-happenedtohannah-ray-1555170456

https://patch.com/florida/clearwater/clearwater-woman-accused-dui-manslaughter-whenmotorcyclist-killed

https://patch.com/florida/clearwater/clearwater-woman-accused-dui-manslaughter-whenmotorcyclist-killed

https://www.727injury.com/blog/12-07-22-driver-charged-with-dui-manslaughter-in-deathof-motorcyclist-in-clearwater/ https://celebcritics.com/hannah-ray-dui-accident-led-to-jeffrey-conner-death/

https://earlymemorials.com/hannah-ray-car-accident-clearwater-fl-arrested-for-dui-afterfatally-striking-motorcyclist/

https://www.wtsp.com/amp/article/news/crime/clearwater-woman-hitting-killing-man-onmotorcycle-crash/67-5e47fbe9-2df1-48e3-8bb2-aac3e4d5b491

https://www.ar15.com/forums/general/Clearwater-woman-killed-motorcyclist-whiledrunk-driving-/5-2606395/

https://www.thelegaladvocate.com/news/breaking/jeffrey-conner-clearwater-dwimotorcycle-crash-gulf-to-bay-us-19

https://www.fox13news.com/news/clearwater-man-dies-after-being-thrown-frommotorcycle-during-crash-fhp-says.amp

https://spotonflorida.com/west-central-florida/4305577/clearwater-woman-accused-ofhitting.ht

https://funeralobitsmemorial.com/hannah-ray-car-involved-in-accident-clearwater-flarrested-for-dui-after-fatally-striking-motorcyclist/

60. Commentary to these posts, among many more, exposed the Plaintiff, **HANNAH M. RAY**,

to public ridicule, contempt, and degradation.

18

61. At least one social media, YouTube channel, username *@DriveThruTours*, removed its post about the Plaintiff, **HANNAH M. RAY**, after contact by counsel:

https://www.youtube.com/@drivethrutours1916/videos.  This page received over **422,000** (Four Hundred and Twenty-Two Thousand) views and over **5,000** (Five Thousand) comments before it was removed.

62. The Defendant, **ROB SHAW**, knew and had reason to know that its public posting about the Plaintiff, **HANNAH M. RAY**, would be shared throughout the public, over and over again. The Defendant, **ROB SHAW**, knew and had reason to know that Public Record Act Requests would be made of videos (BWC footage) and the Clearwater Police Department's reports accusing the Plaintiff, **HANNAH M. RAY**, of a crime that she did not commit. The Defendant, **ROB SHAW**, knew and had reason to know that all such reports and videos would be shared publicly. The Defendant, **ROB SHAW**, knew and had reason to know the substance of the accusations in these reports and videos were false. The Defendant, **ROB SHAW**, knew and had reason to know that websites sharing this information would expose the Plaintiff, **HANNAH M. RAY**, to public contempt, ridicule, and humiliation.

63. The Defendant, **ROB SHAW**, had the knowledge, for at least five months before removing these posts, that the Plaintiff, **HANNAH M. RAY**, was innocent.

64. The Defendant's, **ROB SHAW**, conduct was intentional. The Defendant, **ROB SHAW**, knew such conduct would cause extreme emotional distress, such conduct was outrageous, and such conduct would cause the Plaintiff, **HANNAH M. RAY**, extreme emotional distress.

19

WHEREFORE, the Plaintiff, **HANNAH M. RAY**, requests this Honorable Court award Damages and requests Trial by Jury.

## COUNT FIVE: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH AMENDMENT

The Plaintiff, **HANNAH M. RAY**, sues the Defendant, **SCOTT YEATES**, for violation of her Due Process rights under *The Fourteenth Amendment of the United States Constitution,* and as grounds, states the following:

65. The Plaintiff, **HANNAH M. RAY**, re-alleges the General Allegations contained herein.

66. This is an action for Damages in excess of $50,000.00 (Fifty Thousand dollars) pursuant to the *Ku Klux Klan Act, Title 42 section 1983 of the United States Code.*

67. Federal Law under *The Fourteenth Amendment of the United States Constitution* clearly establishes a Due Process right, to be free from police misconduct in the form of evidence fabrication, witness interference, or concealment of exculpatory evidence that causes an unlawful arrest. (*Geter v. Fortenberry, 882 F.2d 167, 170 (5th Cir. 1989), Cole v. Carson, 802 F.3d 752, 771 (5th Cir. 2015), Riley v. City of Montgomery, 103 F.3d 1247 (11ᵗʰ Cir. 1997).*

68. As noted herein, the Defendant, **SCOTT YEATES**, falsified facts that the Plaintiff, **HANNAH M. RAY,** had bloodshot eyes. *(See Exhibit D)*

69. As noted herein, the Defendant, **SCOTT YEATES**, falsified facts that the Plaintiff, **HANNAH M. RAY,** had mumbled speech.

70. As noted herein, the Defendant, **SCOTT YEATES**, falsified facts that the Plaintiff, **HANNAH M. RAY**, smelled of alcohol. *(See Exhibit C)*

71. These falsified facts were directly utilized by the Defendant, **SCOTT YEATES**, to falsely arrest the Plaintiff, **HANNAH M. RAY**.

72. The Defendant, **SCOTT YEATES**, further failed to document or assess exculpatory facts in the decision to arrest the Plaintiff, **HANNAH M. RAY**, that were readily available to him such as:

> **a)** The Plaintiff, **HANNAH M. RAY**, was walking at the accident scene for more than 4 (Four) hours, exhibiting no signs of impairment in the ability to walk whatsoever;
>
> **b)** The Plaintiff, **HANNAH M. RAY**, spoke to multiple police officers for several hours in clear, unimpaired speech that was repeatedly recorded;
>
> **c)** The Plaintiff, **HANNAH M. RAY**, recognized a jacket, given to her by another Officer, was inside out and re-arranged it properly and put it on herself correctly;
>
> **d)** The Plaintiff, **HANNAH M. RAY**, was wearing thigh-high heeled boots and was able to not only walk around the scene of the collision as directed, but was able to take each boot off and put each boot back on, standing on one leg. The Plaintiff, **HANNAH M. RAY**, further entered and exited an Ambulance, twice, wearing the same thigh-high heeled boots, while being handcuffed with both hands behind her back, unassisted with no issues. *(See Exhibit E)*

73. As a direct and proximate result of the Defendant's, **SCOTT YEATES**, violation of the Plaintiff's, **HANNAH M. RAY**, *Fourteenth Amendment* rights, she was unlawfully arrested against her will.

**WHEREFORE**, the Plaintiff, **HANNAH M. RAY**, requests this Honorable Court award

Damages, Trial by Jury and Attorney Fees, as permitted by law.

 /s/ W. Thomas Wadley

*W. Thomas Wadley, Esquire.*
*Florida Bar No.: 340170*
*GBYS & Associates, PLLC.*
*2037 1st Avenue North*
*St. Petersburg, Florida 33713*
*Telephone: (727) 895-7932*
*Facsimile: (727) 895-7507*
*Primary Email:*
*TWadley@gbyassociates.com*
*Alternate Email:*
*servicedocs@gbyassociates.com;*
*ams@gbyassociates.com*
*Attorney for the Plaintiff*

22

"EXHIBIT A"



"EXHIBIT B"

(1 of 3 pages)





**City of Clearwater Government**
December 1, 2022 · 🌐

Beginning at 10 p.m. Friday, Dec. 2, to 6 a.m.
Saturday, Dec. 3, all lanes of northbound U.S. 19
will be closed between Belleair Road and Seville
Boulevard for work on a new pedestrian
overpass. Drivers will be detoured around the
work zone by exiting onto the northbound U.S.
19 frontage road at Belleair Road and continuing
north until the entrance ramp at Gulf-to-Bay
Boulevard.

Starting at 8 p.m. Saturday, Dec. 3, to 8 a.m.
Sunday, Dec. 4, all southbound lanes will be
closed. Drivers traveling southbound on U.S. 19
will detour around the work zone by exiting at
Drew Street, continuing west to Belcher Road,

**See more of City of Clearwater Government on Facebook**

Log In    or    Create new account

"EXHIBIT B"                                                                (2 of 3 pages)



Starting at 8 p.m. Saturday, Dec. 3, to 8 a.m. Sunday, Dec. 4, all southbound lanes will be closed. Drivers traveling southbound on U.S. 19 will detour around the work zone by exiting at Drew Street, continuing west to Belcher Road, east on Belleair Road, and then south on the U.S. 19 frontage road to re-enter the highway.

In addition, all motorists traveling northbound must exit at Belleair Road and continue north on the frontage road to re-enter U.S. 19.

Harn Boulevard from the southbound U.S. 19 frontage road will remain open to local traffic. Electronic message boards will help motorists traveling through the area.

The closure is necessary for crews to install

**See more of City of Clearwater Government on Facebook**

| Log In | or | Create new account |

"EXHIBIT B"

(3 of 3 pages)



the frontage road to re-enter U.S. 19.

Harn Boulevard from the southbound U.S. 19 frontage road will remain open to local traffic. Electronic message boards will help motorists traveling through the area.

The closure is necessary for crews to install structures over U.S. 19 as part of the new pedestrian overpass north of Harn Boulevard. This project is expected to finish in the spring of 2023. For more information on this project or to sign up to receive construction updates and traffic alerts, please visit the **FDOT West Central - Tampa Area** website at FDOTtampabay.com **See less**

## See more of City of Clearwater Government on Facebook

Log In   or   Create new account

"EXHIBIT C"

(1 of 4 pages)

## Pinellas County Emergency Medical Services
## Patient Care Report

**Patient Name:** HANNAH RAY

**EMS Run#:** 2762642

**FINAL**

**DOS:** 12/04/2022    **Job:** 0021-A    **Vehicle:** 23    **FD Incident#:** 2198993

**Agency:** PINELLAS COUNTY EMS D/B/A SUNSTAR

**CREW INFO** Report Completed By: BROWN, JONATHAN

Crew1: BROWN, JONATHAN, Paramedic PMD540971    Crew2: AMAYA, JUAN, EMT PMD543410

### RESPONSE INFO

| | |
|---|---|
| Call Type: | ALS 1 |
| Call Nature: | TRAUMA ALERT |
| Resp.Priority: | 1 - Emergency |
| Ass't Agency: | Clearwater |
| Ass't Unit: | 195, R49, CPD |
| 911 Grid: | 291A |
| Location: | GULF TO BAY BLVD & US HIGHWAY 19 N CLEARWATER, FL 33759 |

### DESTINATION

Destination Reason:

Trans.Priority:

Destination:

Destination Type:

At Scene Mileage:

At Destination Mileage:

### TIMES

| | |
|---|---|
| Call Received: | 12/04/2022 00:33 |
| Dispatch: | 12/04/2022 00:33 |
| Enroute: | 12/04/2022 00:34 |
| At Scene: | 12/04/2022 00:34 |
| At Patient: | 12/04/2022 00:35 |
| Transport: | |
| At Destination: | |
| In Service: | |
| If Cancelled: | 12/04/2022 00:57 |

### PATIENT INFORMATION

**Name:** hannah ray

**Phone:** (727) 667-6722

**Patient Doctor:**

**SSN:** 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

**Date of Birth:** 03/22/1994    **Age:** 28 Years Old

**Weight:** 100.00 LBS / 45.36 KG

**Gender:** Female

**Home Address:** GULF TO BAY BLVD & US HIGHWAY 19 N CLEARWATER, FL 33759

**Patient Mail Addr:**

**Race:** White

**Medical Record Number / Encounter Number:**

**Trauma Alias:**

**Advanced Directives:** None

### INSURANCE

No Insurance Information Entered

### SCENE INFORMATION

| | | |
|---|---|---|
| **Patient Found:** On Floor | **Position Found:** Standing | **Patient Moved To Stretcher Via:** Assisted |
| Can Patient Get Up w/o Asst? Yes | Can Pt Ambulate w/o Asst? Yes | Can Pt Sit in a Chair or Wheelchair w/o Asst? Yes |

### CHIEF COMPLAINT

**Chief Complaint**

None Voiced (Primary)

**Activity at Onset:** Sitting

**Time of Onset:** 12/04/2022  00:30 +/- 5 min

### NARRATIVE

Sunstar dispatched out as the second SS unit for a MVC car vs motorcycle, multiple patients.
TRAUMA ALERT DECLARED ENROUTE.

Upon arrival pt found leaning up against the backside of her car. Per pt she was the restrained driver of her care, she went to make a left turn and all of a sudden was struck by a motorcycle on her R side. Pt reports she is fine and has no medical complaints.
Pt's vehicle had moderate damage to the R side of her car with roughly 1/2-1 inches of intrusion to the passenger side, at the door handle.
Pt transferred to our ambulance without incident.

Upon secondary assessment pt vitals were unremarkable.
Pt Hr was intimally elevated and slowly came down to normal levels', pt's Bp reaming normal, pt's SPO2 remanned normal.
Upon head to toe assessment pt had no injuries, deformities, spinal pain or discomfort, no head injuries, denies any LOC, ETOH, or drug usage.

Pt to refuse transport and further care.
Pt admits to being shaken up from the experience and was very concerned for the other patients well being.

Upon speaking with the patient she refused to be evaluated further at a ER, pt has decisional capacity and was explained the risks of refusal up to and including death. Pt left with CPD officers.

### IMPRESSIONS

**Primary Impression:** Informed Refusal - No Complaint Voiced

### TREATMENT SUMMARY

| Time | PTA | Treatment | Completed By | Certification Level | Comments |
|---|---|---|---|---|---|
| 00:37 | | Spinal Precautions Worksheet | | | |

Number of Attempts=1

Spine Pain,Tender,Deformed?=No-No pain or tenderness or deformity to neck/back

Has Distracting Injury?=No-Pt is free of distracting injury or other Sx

Indication (Protocol)=General Trauma Care

Successful=Yes

AMS or GCS < 15?=No-Pt has GCS of 15 at time of decision

Neuro Deficit Since Injury?=No-No neuro deficit/weakness/numbness since injury

Authorizing Physician=Standing Order (MD1)

BROWN, JONATHAN  Paramedic

Response=Unchanged

EtOH / Drug Use?=No-Pt has NO suspected EtOH / Drug impairment

Decision - S.P. Indicated?=All NO - Spinal Precautions (SP) not indicated

Complication=None

"EXHIBIT C"                                                                          (2 of 4 pages)

## Pinellas County Emergency Medical Services
## Patient Care Report

| | |
|---|---|
| Patient Name: HANNAH RAY | EMS Run#: 2762642 |
| DOS: 12/04/2022    Job: 0021-A    Vehicle: 23 | FD Incident#: 2198993    **FINAL** |

Agency:  PINELLAS COUNTY EMS D/B/A SUNSTAR

### CREW INFO    Report Completed By: BROWN, JONATHAN

Crew1: BROWN, JONATHAN, Paramedic PMD540971                          Crew2: AMAYA, JUAN, EMT PMD543410

### TREATMENT SUMMARY (Continued)

| Time | PTA | Treatment | | Completed By | Certification Level | Comments |
|---|---|---|---|---|---|---|
| 00:38 | | Move Pt to Stretcher | | | | |

Number of Attempts=1                          Procedure Result=Successful                          Response=None Observed
Movement Method=Assisted                       Safety Strap Status=All Secured w Side Rails Up       Complication=None
                                               BROWN, JONATHAN    Paramedic

| Time | BP | Pulse | Respiratory | SPO2 | EtCO2 | Glucose | GCS |
|---|---|---|---|---|---|---|---|
| 00:41 | 146/96 Automated Cuff | 113, <None> | 16, <None> | 99%, Source: Room Air | | | E4 + V5 + M6 = 15 |

Skin Temp=Normal
Level of Consciousness: Alert; Pain Scale=0;

BROWN, JONATHAN

| Time | BP | Pulse | Respiratory | SPO2 | EtCO2 | Glucose | GCS |
|---|---|---|---|---|---|---|---|
| 00:47 | 145/93 Automated Cuff | 100, <None> | 16, <None> | 99%, Source: Room Air | | | E4 + V5 + M6 = 15 |

Skin Temp=Normal
Level of Consciousness: Alert; Pain Scale=0;

BROWN, JONATHAN

### HISTORY

Past Medical History
Other
Note: celiac disease
Allergies
No Known Drug Allergy                          No Known Environmental/Food Allergies
Medications
Thyroid (ARMOUR THYROID)
Last Oral Intake

Medical Hx Obtained From
Patient

### ASSESSMENT

12/04/2022 00:43:32    By: BROWN, JONATHAN

| Body Area | Assessments and Comments | Body Area | Assessments and Comments |
|---|---|---|---|
| General | Normal Appearance, Work of Breathing, and Skin | Airway | Patent |
| Breathing | Normal Lung Sounds and Respirations | Circulation | Circulation WNL |
| Disability / Neuro | Alert & Oriented x4 with no focal neuro deficits | Exposure / Skin | Normal Color, Temp, Moisture, Condition |

### TRAUMA

Trauma
MVC - Speed - < 20 MPH              MVC - Speed - > 20 MPH              MVC - Type of Accident - Broadside              MVC - Airbag - Deployed Side
MVA - Position of Patient in Vehicle - Front Left Seat (Driver Side)/Motorcycle Driver              MVC - Damage - Moderate damage              MVC - Protective Devices - Shoulder and Lap Belt Used              MVC - Scene - Skidmarks not present
Cause of Injury
MVC-Passenger Vehicle
Mechanism of Injury
Blunt

### SCORES

No Scores Entered

### CARDIAC ARREST

"EXHIBIT C"                                      (3 of 4 pages)

## Pinellas County Emergency Medical Services
### Patient Care Report

**Patient Name: HANNAH RAY**                                      **EMS Run#: 2762642**          **FINAL**

**DOS: 12/04/2022**    **Job: 0021-A**    **Vehicle: 23**    **FD Incident#: 2198993**

**Agency: PINELLAS COUNTY EMS D/B/A SUNSTAR**

**CREW INFO**    Report Completed By: BROWN, JONATHAN

Crew1: BROWN, JONATHAN,   Paramedic PMD540971                    Crew2: AMAYA, JUAN,   EMT PMD543410

**DISPOSITION**

| | | |
|---|---|---|
| # Transported In This Unit: | Outcome: Patient Refused Care | Position Pt. Trans.: |
| # Patients At Scene:  Multiple Patients on Scene | | |
| Onscene Transfer of Care: | DestinationTransfer of Care: | Other Transporting Agency: |
| Barriers to Care:  None Noted | Delay in Transport: <None> <None> <None> | Delay at Destination: None/No Delay |
| Initial Patient Acuity: Green: Non-Urgent | Final Patient Acuity: | Pt. Last Known Status: |

"EXHIBIT C"                                                          (4 of 4 pages)

## Pinellas County Emergency Medical Services
## Patient Care Report

| | | | | |
|---|---|---|---|---|
| **Patient Name: HANNAH RAY** | | | **EMS Run#: 2762642** | **FINAL** |

**DOS: 12/04/2022**      **Job: 0021-A**      **Vehicle: 23**      **FD Incident#: 2198993**

**Agency: PINELLAS COUNTY EMS D/B/A SUNSTAR**

**CREW INFO**  Report Completed By: BROWN, JONATHAN

Crew1: BROWN, JONATHAN, Paramedic PMD540971                    Crew2: AMAYA, JUAN, EMT PMD543410

### SIGNATURES

| Time | Type | Who signed | Why patient did not sign |
|---|---|---|---|
| 12/04/2022 00:48 | 03 REFUSAL - NO TRANSPORT | *Self - ray, hannah* | <Not applicable> |

This is acknowledgement that I, the undersigned, am (a) the patient; (b) the patient's legal guardian; (c) a minor patient's parent; or (d) the patient's health care surrogate and I refuse for myself or the patient for EMS personnel to evaluate me or the patient and do not authorize EMS personnel to transport me or the patient to the hospital by ambulance.
I am a competent adult and certify that I have been fully informed and understand that:
- I or the patient requires emergency medical care; and
- I or the patient should go to a hospital for further emergency care; and
- Refusal of evaluation and transport by ambulance to a hospital may imperil my or the patient's health or result in my or the patient's death.
- Understanding the above, I refuse evaluation by EMS personnel and transport by ambulance to a hospital and I assume all risk and consequences of such refusal and the patient and the patient's personal representatives release Pinellas County and the Pinellas County Emergency Medical Services Authority, and each and every officer, agent, subcontractor and employee of Pinellas County and the Pinellas County Emergency Medical Services Authority, from any and all liability, including all claims and causes of action that the undersigned, the patient or any person acting on behalf of the patient may have or claim to have in the future against Pinellas County or Pinellas County Emergency Medical Services Authority, by reason of any illness, injuries, death or other consequences resulting directly or indirectly from the patient's refusal of medical care and/or the patient's refusal of transport to the recommended facility.
By signing below, I acknowledge that I am one of the authorized signers listed below. Authorized representatives include only the following individuals: (a) Self; (b) a legal guardian of the patient; (c) a parent of a minor patient; or (d) a legal Health Care Surrogate.
**Type of Person Signing:   Patient**

### CREW INFORMATION

**Start Date/Time :** 12/03/2022 17:00

**Crew #1 Name:** 350004  BROWN, JONATHAN       **Crew #2 Name:** 348714  AMAYA, JUAN

**Crew #1 State ID:** PMD540971                **Crew #2 State ID:** PMD543410

**Crew #1 Level:** Paramedic                   **Crew #2 Level:** EMT

### BELONGINGS

Items Left :                                              Left With:



"EXHIBIT D"



"EXHIBIT E"

(1 of 2 pages)



"EXHIBIT E"

(2 of 2 pages)



"EXHIBIT F"

"EXHIBIT G"

